**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**THE HONORABLE JAMES C. MAHAN, JUDGE PRESIDING**

DAVID STUEVE, et al.
    Plaintiffs,
vs.                             NO. 2:07-CV-1659-JCM-PAL
KIRK SANFORD, et al.,         **MOTION TO DISMISS**
    Defendants.
_____/

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

THURSDAY, MAY 14, 2009

10:00 A.M.

**APPEARANCES:**

For the Plaintiffs:    GEORGE C. AGUILAR, ESQ.
                         ROBERT B. WEISER, ESQ.
                         JOHN ALDRICH, ESQ.

For the Defendants:    ERIK OLSON, ESQ.
                         JAMES PISANELLI, ESQ.
                         ERIC OLSEN, ESQ.
                         PHILIP SMITH, ESQ.
                         J. RANDALL JONES, ESQ.

Reported by:   Joy Garner, CCR 275
               Official Federal Court Reporter

```
 1        LAS VEGAS, NEVADA, THURSDAY, MAY 14, 2009
 2                        10:00 A.M.
 3                         *   *   *
 4                      P R O C E E D I N G S
 5
 6           THE CLERK:  David Stueve versus Kirk
 7  Sanford, 2:07-CV-1659-JCM-PAL.  This is the time
 8  set for motions to dismiss.
 9                Counsel, please note your
10  appearances for the record.
11           MR. AGUILAR:  Good morning, your Honor,
12  George Aguilar for Robbins Umeda and the
13  plaintiffs.
14           MR. PISANELLI:  Good morning, your
15  Honor, James -- I'm sorry.
16           MR. WEISER:  That's okay.  Rob Weiser
17  also on behalf of plaintiffs.  And also I'd like
18  to take the opportunity to apologize.  I am not
19  trying to make a fashion statement, your Honor,
20  nor am I trying to emulate our new president,
21  rather I realized this morning I forgot my tie.
22           THE COURT:  All right.
23           MR. WEISER:  So I do offer my apology.
24           THE COURT:  Mr. Pisanelli?
25           MR. PISANELLI:  James Pisanelli and I'm
```

```
 1  here with my co-counsel Erik Olsen.  We're here
 2  on behalf of the defendants, Scott Betts, Fred
 3  Enlow, Charles Fitzgerald, Harry Hagerty, William
 4  Harris, Geoff Judge, Miles Kilburn, Walter
 5  Kortschak, Kirk Sanford, and Summit Partners, LP.
 6              THE COURT:  Thank you.
 7                  Mr. Olsen?
 8              MR. OLSEN:  Good morning, your Honor.
 9  I have become the other Eric Olsen this morning.
10              THE COURT:  Yes.
11              MR. OLSEN:  I'm here along with Phil
12  Smith of Patton Boggs, my co-counsel.  His
13  application for pro hac is pending.  We're
14  representing Defendants Maskatiya, Cucinotta, and
15  M and C International.
16              THE COURT:  All right.  Thank you.  Mr.
17  Jones, are you entering an appearance or are you
18  just observing?
19              MR. JONES:  Just observing, your Honor.
20              THE COURT:  Oh, all right, that's fine.
21  Thank you.
22              MR. ALDRICH:  And, your Honor, I'm John
23  Aldrich.  I'm just local counsel for plaintiffs.
24              THE COURT:  Yes, sir.  I know, Mr.
25  Aldrich.  Thank you.
```

1                    All right, I've reviewed this
2    with my brain trust here.  Let me tell you what
3    I'm inclined to do and then I'll give everybody a
4    chance to argue.  I'm not sure what the
5    plaintiffs are doing here.  I mean we've had how
6    many amended complaints, and it seems like we're
7    going nowhere.  I mean there was a complaint
8    filed in September, an amended complaint, and
9    then here's an amended complaint without any
10   authority filed in December that doesn't cure the
11   deficiencies that we're pointed out against the
12   prior complaint.
13                   I don't know where we're going.
14   I don't know what you guys are doing.  This is a
15   mess.  I'm going to give you a chance to argue.
16   I shouldn't say argue.  I'm going to give you a
17   chance to explain to me what the devil you're
18   doing, but it eludes me.  This is absolutely --
19   I've never seen anything like this.  This is
20   amazing.  Don't furrow your brow at me unless you
21   brought your toothbrush with you.  This is a
22   mess, Plaintiffs.
23                   All right, the action is
24   brought -- back to law school -- is brought
25   because the corporation refuses to act, the board

1  of directors refuses to act.  So you make demand
2  on the board and say, act, here's what you're
3  supposed to do, accept the tender offer.
4  Whatever it may be, they're supposed to do, and
5  then they either act or they refuse to act, and
6  then you can bring a lawsuit against them or you
7  can show -- you can allege that there's a demand
8  futility, that they're so intertwined with this
9  that a demand would be futile, but in any event,
10 you've got to allege facts to support that.
11 There aren't any facts to support what the
12 individual directors did here.
13              Now, further confusing all of
14 this is all these amended complaints, what board
15 is the demand made on?  And the law is that
16 you've got to make demand on the present board.
17 When you amend your complaint and change
18 everything, it's got to be on the board that
19 exists now when you file your new complaint.  So
20 the whole thing is just -- it's just a mess.
21              How does he pronounce his name?
22 Stueve?
23         MR. AGUILAR:  Stu-vee (phonetic), your
24 Honor.
25         THE COURT:  Stueve, thank you.  I'm

```
 1  sorry.  Mr. Stueve fails to properly allege that
 2  he held the stock continuously and that he's a
 3  stockholder.  So he doesn't show standing.  Now,
 4  the Plaintiff Mollenkopf appears to have
 5  standing.  So at least we're by that, but the
 6  board of directors in existence on September 26,
 7  2008, which is the last authorized amended
 8  complaint, there's been no showing of a proper
 9  demand on the individual members, how the
10  individual members failed to act, and so on.
11                    So I'm inclined to grant the
12  motion to dismiss, but again it's all jumbled up.
13  How many amended complaints have there been in
14  total?  There's been like six complaints and you
15  can't get it right.  So I'm inclined to grant the
16  motion in short.  Now I'll be glad to hear
17  anything you have to say.
18          MR. WEISER:  Sure, your Honor.
19          THE COURT:  Yes, sir.
20          MR. WEISER:  Thank you, your Honor.
21          THE COURT:  Yes, sir.
22          MR. WEISER:  I do appreciate the
23  opportunity to speak to these issues.  As far as
24  I'm aware with respect to the complaints, I
25  believe there were two initial complaints filed
```

1  by two different plaintiffs, a consolidated
2  pleading was filed, an amended pleading was filed
3  upon -- or after the filing of the first motion
4  to dismiss.
5             THE COURT:  Okay, that's four.  I mean
6  we keep going and it's like there's six
7  complaints.
8             MR. WEISER:  And I believe there was a
9  corrected complaint, your Honor.  I believe the
10 amended you referred to that was filed in
11 December was actually just a correction of the
12 prior amended complaint.
13            THE COURT:  So explain to me -- I guess
14 I missed that day in law school -- what's the
15 difference between a correction to a complaint
16 and an amended complaint?
17            MR. WEISER:  Because it was meant to
18 correct factual errors that were actually in the
19 complaint.
20            THE COURT:  So it's not necessary
21 then -- what do you call it then?
22            MR. WEISER:  I'm sorry, your Honor?
23            THE COURT:  What do you call -- this is
24 not an amendment, it's a correction, so what do
25 you call it.  It's not an amended complaint, it's

```
 1  a banana or what do we call it?
 2              MR. WEISER:  No, I'm not the --
 3              THE COURT:  It is an amended complaint.
 4              MR. WEISER:  Okay.
 5              THE COURT:  How do you file that
 6  without getting leave of Court?  I'm just
 7  curious.  Let me get Rule 15.  Let me read that
 8  again to make sure -- I want to make sure I
 9  understand this with you.
10              MR. WEISER:  I thought that we had
11  leave of Court with respect to --
12              THE COURT:  Ah, that's good, I thought,
13  I thought.  Did you check on that to see maybe,
14  maybe we didn't file a motion to amend after all?
15              MR. WEISER:  I will check on that, your
16  Honor.
17              THE COURT:  No, don't check on it.  I
18  checked on it.  It's not there.  You just went
19  out and filed an amended complaint which is a
20  novel way of doing business.  You know, gee, I
21  don't like that.  Oh, we've got a problem here.
22  Let's change our pleading here in midstream
23  particularly something like this where you've got
24  to allege that you made a demand on the board,
25  and the board failed -- the individual board
```

1  members failed to act or it would be futile
2  because Mr. X is this, and Mr. Y is that, and
3  Mrs. Z that.
4            MR. WEISER:  With respect to the issue
5  of demand futility, your Honor, under Delaware
6  law it's well established that plaintiffs do not
7  have to issue a demand upon the board if they
8  believe in good faith that it would be futile to
9  do so.
10           THE COURT:  But they've got to show --
11 they've got to allege why it's futile.  You can't
12 simply say, oh, it's futile to ask these bozos to
13 do anything.  You've got to allege specific facts
14 on the individual defendants on the individual
15 directors.
16           MR. WEISER:  With respect, your Honor,
17 the demand futility allegations in the complaint
18 center upon the stock sales that several of the
19 directors made at various points in time
20 throughout 2006 and 2007.  And we do have a
21 particularized allegation that's very consistent
22 with what you see.  Assuming there's no factual
23 predicate for the allegation, the actual demand
24 futility allegation is very typical for what you
25 see in these cases both in federal and state

```
 1  court.
 2                    And with respect to the
 3  amendments and the applicability of what board
 4  you -- what board is considered for demand
 5  futility purposes, it is a complicated issue,
 6  your Honor.  The general rule, respectfully, is
 7  that -- is that the -- you assess futility on the
 8  board as it existed at the time you initiated the
 9  action.  That's the general rule even under
10  Braddock.
11            THE COURT:  That's correct, but then
12  when you file an amended complaint, it changes,
13  doesn't it?
14            MR. WEISER:  No, respectfully, actually
15  that's not true even under Braddock, your Honor,
16  that's not necessarily true.  It still relates --
17            THE COURT:  Well, is it true or it's
18  not necessarily true?
19            MR. WEISER:  It depends on the facts
20  and whether there was a dismissal with respect to
21  the prior complaint at issue.  There hasn't been
22  any ruling in this court.  There have been some
23  cases.  What Braddock says is this -- first of
24  all, Braddock is based on a Delaware procedural
25  rule and I've yet to see any federal authority
```

1   whatsoever anywhere that explains how the federal
2   procedural rule impacts a derivative proceeding
3   under Rule 23.1 in federal court.
4              I've yet to see it.  There has
5   not been one court that's written substantively
6   about that issue as far as we are aware, and this
7   is a point that defendants make in their papers.
8   Plaintiffs do not dispute that the futility test
9   under Kamen v. Kemper Financial Services, the
10  futility test is a matter of substantive state
11  law, but the slight difference and the important
12  distinction is that you're applying the federal
13  procedural rule to the substantive state text.
14          THE COURT:  Which we do all the time.
15          MR. WEISER:  That's correct, and I'm
16  not aware of any federal rule that encapsulates
17  what Braddock says.
18          THE COURT:  Braddock says the filing of
19  an amended complaint triggers a new demand
20  required on the board of directors in place as of
21  the date of the amended complaint if, one, the
22  original complaint was not validly in litigation;
23  and, two, the amended complaint is significantly
24  different from the original complaint such that
25  the acts and allegations in the amended complaint

```
 1   are not essentially the same as those in the
 2   original complaint, correct?
 3              MR. WEISER:  That's correct.
 4              THE COURT:  So what are you telling me
 5   then?
 6              MR. WEISER:  What I'm telling you is
 7   that the amended complaint was an amplification
 8   with new facts based on the prior theories and
 9   claims that appeared in our initial complaint.
10   That is what we are arguing, and that is
11   precisely what we also argued in Act Now
12   (phonetic), which is a Northern District of
13   California case.
14              THE COURT:  Okay, and I don't care
15   about -- I don't care about what any other
16   district judge does.
17              MR. WEISER:  I understand.
18              THE COURT:  It has no precedential
19   value here.
20              MR. WEISER:  Our position, your Honor,
21   is that we should be entitled to allege futility
22   with respect to the original board in place at
23   the time we initiated the lawsuit.
24              THE COURT:  Why?
25              MR. WEISER:  Because there was never a
```

1  dismissal entered in this case, and the
2  underlying factual theories in the current
3  operative pleading relate back to the same claims
4  that were at issue in the initial pleading.
5           THE COURT:  All right.  Anything else?
6           MR. WEISER:  No, sir.
7           THE COURT:  All right, from the defense
8  side?  Mr. Olson?  Did I get that right?
9           MR. OLSON:  Correct, there's two Mr.
10 Olsons.
11          THE COURT:  Sit down, Mr. Olsen, the
12 other Mr. Olsen, that's fine.
13          MR. OLSON:  I'm going to seek to be
14 extremely brief.  I believe that your Honor has
15 correctly stated the rule under Braddock as to
16 the need to assess demand as of the amended
17 complaint and the -- and that you've stated the
18 rules correctly, including the essentially the
19 same requirement, and the complaints are not even
20 close to being essentially similar.
21                They are -- it's half again as
22 big.  It's got eighty-nine more paragraphs.  It
23 alleges new causes of action, new claims, and new
24 issues.  Let me address then, secondly, as to the
25 six members of the board as of the fall of 2008,

1  and they are the same as to September or December
2  whichever applies.
3           THE COURT:  That's right.
4           MR. OLSON:  Counsel referred to an
5  argument as to why it is that demand would be
6  futile against them and said that it has to do
7  with the trading allegations.  Well, let me just
8  go down the gentlemen.  Patrick Olson as it turns
9  out -- too many Olsons here, Scandinavians
10 running everywhere -- but Patrick Olson is a new
11 director.  He is not alleged to have traded.  He
12 hasn't traded.
13          Fred Enlow is not alleged to
14 have traded.  Geoff Judge is not alleged to have
15 traded.  Miles Kilburn is not alleged to have
16 traded.  I am now up to four.  I actually don't
17 need to go any further because once you have
18 four, you have a majority.  The last person is
19 Charles Fitzgerald or C.J. Fitzgerald, and there
20 was an allegation that he traded.
21          The fact is, and it's clear from
22 the complaint, the amended complaint, that this
23 Summit traded, not Mr. Fitzgerald.  As a result,
24 we have now defeated the arguments related to
25 demand futility.  A majority of the board is

1  disinterested and independent under Rule 23.1 in
2  the applicable Delaware law.  The case must be
3  dismissed.  Let me address one final point.
4              THE COURT:  Sure.
5              MR. OLSON:  And that is it has been a
6  mess.  There's been a vast number of complaints
7  filed.  Two have been filed after motions to
8  dismiss have been rendered and which gives an
9  identification of what the argument and clarity
10 on what those are, and we believe in light of
11 that it is appropriate to grant this motion
12 without leave to amend.
13                  Unless the Court has other
14 questions, I have no --
15             THE COURT:  No, that's fine.  I
16 understand.
17             MR. OLSEN:  Nothing further to add,
18 your Honor.
19             THE COURT:  All right.
20             MR. AGUILAR:  Your Honor, if I may?
21             THE COURT:  Yes, sir.
22             MR. AGUILAR:  George Aguilar for
23 plaintiffs.
24             THE COURT:  Come up to the podium if
25 you would, please, Mr. Aguilar.

1          MR. AGUILAR:  I'm sorry?
2          THE COURT:  Approach the podium,
3  please.
4          MR. AGUILAR:  Oh, sorry.
5              Your Honor, I would like to
6  spend a few moments to address the motion to
7  dismiss on the causes of action.  There was a
8  motion to dismiss for lack of demand futility,
9  and then also a motion to dismiss on the causes
10 of action.  Is your Honor concerned related to
11 this particular area?
12         THE COURT:  No.  I'm really not
13 concerned about that at this point.  The claims
14 for relief are all the plaintiff concedes.  They
15 are all derivative.  So, no, I'm really not
16 concerned about having focused on the claims as
17 much.
18         MR. AGUILAR:  Okay.  I can address
19 those issues now if you like.
20         THE COURT:  I mean I don't know why.  I
21 don't know that we need to.
22         MR. AGUILAR:  Okay. We have filed an
23 opposition, your Honor, to that motion to
24 dismiss.  It's on file, and in the event that you
25 are past the motion to dismiss based on futility,

```
 1   we would be more than willing to answer questions
 2   with respect to the causes of action.
 3              THE COURT:  And I appreciate that.  All
 4   right.
 5              MR. AGUILAR:  Thank you.
 6              THE COURT:  And it comes down to
 7   whether I dismiss this with prejudice or without
 8   prejudice.  Why should I dismiss it without
 9   prejudice?
10              MR. WEISER:  Your Honor, well, I
11   think -- excuse me -- while I think we could
12   write a better complaint, we do believe that
13   futility in this case should be assessed against
14   the board in place at the time we initiated the
15   action.
16              THE COURT:  But that goes against
17   Braddock.
18              MR. WEISER:  I don't think that's a
19   proper interpretation of Braddock respectfully.
20   So we -- we --
21              THE COURT:  All right, all right.
22   That's why God created San Francisco.
23              MR. WEISER:  We'd stand on this
24   complaint, your Honor.
25              THE COURT:  So you are telling me that
```

```
 1   you think this complaint is good and if I said
 2   you have to amend it, you'd say I can't amend
 3   it --
 4            MR. WEISER:  No -- no -- I --
 5            THE COURT:  -- it's done, this is as
 6   good as we can make it.
 7            MR. WEISER:  No, I'm sorry, I didn't
 8   mean to talk over you, your Honor.  I do think we
 9   could amend the complaint and bring some more
10   clarity with respect to certain of the
11   allegations in the complaint, however, it would
12   still be our position that demand futility should
13   be assessed upon the board in place at the time
14   these actions were initiated.  I understand the
15   Court doesn't agree with that view.  So what I
16   would propose is not to waste any more of the
17   Court's time, frankly, because we would be back
18   here a couple of months from now on my amended
19   pleading.
20            THE COURT:  All right.
21            MR. WEISER:  We'd still be arguing for
22   the first board.
23            THE COURT:  All right, then I'll grant
24   the motion with prejudice.
25            MR. WEISER:  Thank you, your Honor.
```

```
 1          THE COURT:  Thank you.  Let me ask you,
 2 Mr. Pisanelli, let me ask you and Mr. Olson as
 3 local counsel to draft an appropriate order for
 4 the Court.
 5          MR. PISANELLI:  We will do that, your
 6 Honor.
 7          THE COURT:  Thank you.  We will be in
 8 recess.
 9
10     (Whereupon, the proceedings concluded.)
11
12
13
14               I hereby certify that pursuant
   to Section 753, Title 28, United States Code, the
15 foregoing is a true and correct transcript of the
   stenographically reported proceedings held in the
16 above-entitled matter.
17
18 Date:  May 19, 2009            /s/ Joy Garner
                                  JOY GARNER, CCR 275
19                                U.S. Court Reporter
20
21
22
23
24
25
```